IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CADET CONSTRUCTION COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20-CV-737 |
| | ) | |
| ARCHER WESTERN CONSTRUCTION, LLC and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The plaintiff, Cadet Construction Company, filed this breach of contract action in August 2020 against the defendants, Archer Western Construction, LLC and Travelers Casualty and Surety Company of America. Since the case was stayed pending arbitration in December 2020, Cadet has taken virtually no steps to move the arbitration towards final resolution, despite repeated requests from the defendants and court orders and in disregard of representations it has made to the Court about its commitment to its case. The defendants ask the court to dismiss Cadet's claims with prejudice for failure to prosecute. The motion will be granted.

## FACTS

Cadet filed this action in August 2020 against Archer and Travelers, contending that Archer, the contractor on a construction project, and Travelers, its surety, had failed

to pay Cadet, a subcontractor, over a million dollars for work performed. *See* Doc. 1 at ¶¶ 14–15, 20, 51. Both defendants answered the complaint, Docs. 15, 17, and Archer asserted a counterclaim against Cadet for breach of contract. Doc. 15 at 16. As the interests of Travelers and Archer are aligned and they have acted jointly throughout these proceedings, the Court will refer to the defendants jointly as "Archer" for ease of reading.

Archer, with the consent of Cadet, moved to compel arbitration on December 8, 2020, Doc. 21, and on December 9, 2020, the Court granted the motion. Doc. 25. The Court also stayed proceedings until "the arbitration proceedings have concluded or further order of the Court." *Id.* The Court stated its intention to dismiss the case if the parties did not seek other action by January 3, 2022, *id.*, thus giving the parties over one year to arbitrate. Around the same time, the parties agreed to arbitrate Archer's counterclaim as well. *See* Doc. 34-1.

The parties mediated in February 2021, but the case did not settle. Doc. 34 at 1. The parties took their times selecting a mediator, repeatedly consenting to deadline extensions, and finally began discussing arbitrators in June 2021. *Id.* at 2, Doc. 37 at 3. The arbitrator initially selected by the parties declined to serve. Doc. 34 at 2, Doc. 37 at 3. Cadet was slow to respond to Archer's ongoing efforts to select another arbitrator and matters ground to a halt. Doc. 34 at 2, Doc. 37 at 3. Specifically, after being provided the hourly rate of the arbitrator in August 2021, Cadet would not approve or disapprove the rate. Doc. 34 at 2.

In May 2021, Cadet's senior vice president, Jimmy Dillahunt, was diagnosed with cancer. Doc. 49-1 at ¶ 9. Mr. Dillahunt is responsible for Cadet's day-to-day operations,

2

*id.* at ¶ 5, and is ordinarily solely responsible for its business decisions, including decisions about legal action. *Id.* at ¶ 6. Following Mr. Dillahunt's cancer diagnosis, he had surgery in July 2021. *Id.* at ¶ 11. He has received ongoing medical treatment since that time, but there is no evidence that his cancer treatment incapacitated him.

Cadet stopped paying its lawyers, so Cadet's counsel filed a motion to lift the stay on September 8, 2021, to allow them to file a motion to withdraw. Doc. 27; *see* Doc. 32. Cadet's counsel also requested the Court "modify the stay such that the deadline for the parties to provide a status update to the Court be extended from January 3, 2022, to June 3, 2022." Doc. 27 at ¶ 6.

The Court lifted the stay for the limited purpose of allowing Cadet's counsel to file a motion to withdraw. Doc. 31. The Court directed counsel to serve Cadet with the motion and give Cadet notice of the time to respond or object; it also reserved ruling on the motion to extend the stay. *Id.* Counsel for Cadet filed its motion to withdraw the same day. Doc. 32.

Archer did not object to counsel's motion to withdraw and did not specifically object to the extension of the stay. *See generally* Doc. 34. But Archer did ask that the Court impose other requirements in view of ongoing delays. *Id.* at 3. For example, Archer suggested that Cadet be required to deposit money to pay the arbitrator and suggested dismissal with prejudice would be appropriate if Cadet did not proceed. *Id.*

Cadet did not object to its counsel's motion to withdraw. Its withdrawing attorney did file a brief denying that the delays were solely attributable to Cadet, acknowledging that Cadet had not yet agreed to a particular mediator, and contending that the additional

3

requirements suggested by Archer were not necessary. Doc. 37 at 3. Counsel for Cadet did not mention Mr. Dillahunt's cancer or treatment.

On October 13, 2021, the Court granted counsel's motion to withdraw based on Cadet's failure to pay reasonable attorneys' fees and for good cause shown. Docs. 32, 40. Because Cadet is a corporation and cannot proceed *pro se*, the Court ordered Cadet to obtain new counsel within thirty days. Doc. 40. The Court also denied the motion to extend the stay, noting that the deadline was a dismissal date, not a deadline to file a status report. *Id.* at 3. The Court declined to impose other conditions as suggested by Archer, pointing out that "[i]f Cadet in fact is not timely proceeding with an arbitration, [the case] can be dismissed in January 2022." *Id.*

Exactly 30 days later, on November 12, 2021, Cadet's newly obtained counsel filed a notice of appearance. Doc. 42. Even though defense counsel gave Cadet's new counsel relevant materials in order to expedite evaluation of the case, Cadet did not respond to Archer's emails about arbitrator selection, next steps, or setting a date. Doc. 48 at 3.[1] Eventually, in mid-December 2021, as the deadline approached for dismissal of the case, Cadet asked if Archer would consent to a status report representing that an arbitrator had been selected and the arbitration was moving forward. *Id.* Archer initially said they would consent only if Mr. Huckel, the finally-agreed-upon arbitrator, was

---

[1] The parties have not submitted evidence about many of the efforts at communications during this or later times and to some extent rely on factual assertions in the briefs. Cadet has not disputed these facts, which are within counsel's knowledge, and counsel are officers of the Court with ethical duties of honesty. Therefore, the Court accepts these representations.

4

formally engaged and Cadet made the required deposit. *Id*. However, because Mr. Huckel did not require a deposit, Archer agreed to a status report indicating arbitration was moving forward. *Id*. at 4.

Mr. Dillahunt began exhibiting symptoms of COVID-19 in December 2021 and tested positive for COVID-19 at the end of December. Doc. 49-1 at ¶¶ 14–15. In early January 2022, he underwent treatment for severe symptoms of COVID-19 and was ultimately diagnosed with COVID pneumonia. *Id*. at ¶¶ 16–17. He continued to experience symptoms through early March 2022 and underwent several pharmaceutical treatments to alleviate the symptoms. *Id*. at ¶¶ 18–19.

The parties filed a joint status report on January 3, 2022, informing the Court that an arbitrator had been selected and that the parties were "working to establish a definite schedule for the arbitration." Doc. 43. The parties also asked that the action "not be dismissed and that the stay be continued." *Id*. Neither Mr. Dillahunt's illness nor his cancer treatment was mentioned.

On January 5, 2022, the Court, in its discretion, extended the stay through and including April 14, 2022. Doc. 44. The Court explicitly stated its expectations that the parties "immediately schedule the arbitration for a time within the first quarter of this year and . . . timely complete it." *Id*. at 2. The Court notified the parties that the case would be dismissed without prejudice on or around April 15, 2022, in the absence of a motion to continue the stay filed no later than March 31, 2022. *Id*.

Since the filing of the status report in January, Archer has received virtually no communication from Cadet, despite efforts by their attorneys to move the arbitration

5

forward. Doc. 48 at 4. The only contact between the parties appears to be a brief email exchange and telephone conversation, but that occurred only after Archer sought to lift the stay so they could file a motion to dismiss with prejudice. *Id.* at 4 n.1. At no point did Cadet seek an extension of the stay in light of Mr. Dillahunt's health issues, and there is nothing to indicate that Cadet's attorneys ever told Archer's attorneys that Mr. Dillahunt's health was the reason for delays.

Archer filed the motion to lift the stay for the purpose of filing a motion to dismiss for Cadet's failure to prosecute its claims and disobeying the Court's orders on March 15, 2022. Doc. 45. Cadet did not object to lifting of the stay so Archer could file the proposed motion, and the Court lifted the stay for that limited purpose. Text Order 03/22/2022. The Court explicitly noted that the provisions of its January 5, 2022, order remained in place, such that the case would be dismissed on April 15, 2022, if no motion to extend the stay or take other action was filed. Text Order 03/16/2022.

Archer then filed their motion to dismiss on March 23, 2022, asking that Cadet's claims be dismissed with prejudice pursuant to Fed. R. Civ. P. 41(b) for failure to prosecute and stating its intention to dismiss its counterclaims if the Court did so. Doc. 48 at 1. The March 31, 2022, deadline to file a motion to continue the stay passed, and no party has asked the Court to extend the stay or take any other action.

Cadet has responded to Archer's motion, Doc. 49, informing the Court for the first time of Mr. Dillahunt's illness. *Id.* at 1–3; Doc. 49-1. Cadet essentially concedes that dismissal is appropriate but contends that dismissal with prejudice is not warranted. Doc. 49 at 3.

6

**DISCUSSION**

When a court compels arbitration and stays proceedings, the case remains pending and the court retains jurisdiction to take appropriate action, including action to ensure the arbitration actually goes forward. *See, e.g., Vellone v. First Union Brokerage Servs., Inc.*, 163 F. Supp. 2d 551, 553 (D. Md. 2001) (collecting cases). Courts have the inherent authority to control the litigation before them, including the authority to dismiss a case with prejudice for failure to prosecute. *See Link v. Wabash R.R.*, 370 U.S. 626, 629–30 (1962); *Doyle v. Murray*, 938 F.2d 33, 34 (4th Cir. 1991). This authority is also recognized in the Federal Rule of Civil Procedure 41(b), which explicitly provides for dismissal of an action for a plaintiff's failure to prosecute or failure to comply with court orders, and the dismissal can be with prejudice. *See Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989).

District courts take four factors into account in deciding whether Rule 41(b) dismissal with prejudice is appropriate as a sanction:

> (1) the degree of personal responsibility on the part of the plaintiff, (2) the amount of prejudice to the defendant caused by the delay, (3) the presence or absence of a drawn out history of deliberately proceeding in a dilatory fashion, and (4) the effectiveness of sanctions less drastic than dismissal.

*Davis v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978) (cleaned up). "[T]he four factors . . . are not a rigid four-prong test" and dismissal depends "on the particular circumstances of the case." *Ballard*, 882 F.2d at 95.

Archer requests a dismissal with prejudice, Doc. 48 at 1, while Cadet requests dismissal of its claim without prejudice. Doc. 49 at 3. "A dismissal with prejudice under

7

Rule 41(b) is a harsh sanction which should not be invoked lightly in view of the sound public policy of deciding cases on their merits." *Herbert v. Saffell*, 877 F.2d 267, 269 (4th Cir. 1989) (cleaned up).

Cadet bears all responsibility for the delays over the last ten months and for the failure to complete the arbitration. While both parties appear to have moved slowly at the beginning of the stay, Archer has made every effort to move the arbitration forward since at least the summer of 2021. Cadet has barely responded, and then only when there was an impending court deadline. There is nothing to indicate that Cadet's lawyers were responsible for the delay. Indeed, Cadet failed to pay its original lawyers, and it admits it has not spent time on the case since the onset of Mr. Dillahunt's cancer symptoms in May 2021. *See* Doc. 49 at 6; Doc. 49-1 at ¶¶ 8, 13, 21–22.

Cadet contends that it is not responsible for the delays, which it attributes to Mr. Dillahunt's health issues. Doc. 49 at 4–5. First, Mr. Dillahunt's health issues have been sporadic, and Cadet acknowledges that Mr. Dillahunt has been able to work at least some of the time. *Id.* at 3. Second, Cadet is a corporation, and presumably there are other corporate officers who could have stepped in to oversee this matter or at least deal with the scheduling and administrative tasks associated with scheduling the arbitration. Yet Cadet has not been willing to designate anyone to handle even such simple matters as finalizing arrangements with the arbitrator and picking a date and time for the arbitration. No one at Cadet has taken even the most basic steps needed to move the case forward, and Cadet has never asked the Court to extend the stay based on Mr. Dillahunt's health issues. This factor heavily weighs towards dismissal with prejudice.

Archer has been prejudiced by the failure to prosecute. The dispute is over a substantial amount of money and has been pending for almost two and a half years with nothing to show for it. Archer has been unable to pursue its counterclaim as a result. While this prejudice is relatively small given Archer's willingness to dismiss its counterclaim, this factor still weighs slightly in favor of dismissal with prejudice.

The evidence shows that Cadet has a history of acting in a dilatory fashion and has drawn this case out for no good reason. Beginning last summer, Cadet failed to pay its lawyers. Thereafter, it failed to take any steps except in the face of upcoming deadlines imposed by the Court; even then, it took only the minimum steps needed to avoid dismissal. It represented to the Court in early January that it was ready to move forward with the arbitration, but it then took not one step to make that happen. The evidence, taken together, give rise to an inference of deliberate delay. This factor weighs in favor of dismissal with prejudice.

Cadet again relies on Mr. Dillahunt's health, contending that its delay was not deliberate. *Id.* at 4–6. But, as stated *supra*, his health issues have been sporadic, he has been able to spend some time on company business, and there is no evidence as to why no one else could act for Cadet besides Mr. Dillahunt, especially as the case dragged on.

Cadet acknowledges that dismissal is appropriate, but it says that dismissal without prejudice is sufficient. That probably would have been the case in January. But in January, Cadet told the Court it was ready to move the case forward and asked the Court to extend the stay for that purpose. Doc. 43. The Court relied on those representations and did so, clearly stating its expectations that the parties must schedule

9

the arbitration for a time within the first quarter of 2022 and timely complete it. Doc. 44 at 1–2. Despite this Order and Cadet's representations that it was ready to move the case forward, Doc. 43, Cadet has done nothing. Even after Mr. Dillahunt's "severe respiratory symptoms" subsided in early March, Doc. 49-1 at ¶ 18, it did not reach out to Archer to schedule the arbitration. To this day it has not communicated with Archer about a date or time for the arbitration or done anything to show that it will ever be serious about prosecuting its claims. In order to appropriately take into account Cadet's disregard of its own promises and representations to the Court and of the Court's clear and specific directions, dismissal with prejudice is necessary.

Cadet asserts that it did not receive notice that the court would dismiss the action with prejudice. Certainly "explicit and clear" notice of the possibility of dismissal with prejudice is required because "fairness demands it," *Choice Hotels Intern., Inc. v. Goodwin & Boone*, 11 F.3d 469, 471 (4th Cir. 1993), and plaintiffs should be given the opportunity to be heard before their action is dismissed with prejudice. *See Andes v. Versant Corp.*, 788 F.2d 1033, 1036 (4th Cir. 1986) (holding the district court abused its discretion when granting defendants' request for dismissal with prejudice before the plaintiff could respond).

But here, the Court is not acting *sua sponte* to dismiss this action with prejudice. Archer first mentioned the possibility of a dismissal with prejudice many months ago. Doc. 34 at 3, and Cadet knew that dismissal with prejudice was an option when Archer first filed a motion to lift the stay so it could seek dismissal with prejudice. Doc. 45. The Court gave Cadet an opportunity to be heard on that motion and stated, if the motion was

filed, the regular briefing schedule would apply, clearly indicating it would consider the motion. Text Order 03/16/2022. Once it was filed, the pending motion gave Cadet specific notice that dismissal with prejudice was now on the table. Once the motion to dismiss with prejudice was filed, Cadet had the opportunity to respond—and did respond—in opposition, specifically addressing this possible sanction. Doc. 49. Cadet also had time to take steps to move the arbitration forward or seek an extension of the stay based on Mr. Dillahunt's health, but it did not do so. Cadet has had appropriate notice and opportunity to be heard.

## CONCLUSION

A stay pending arbitration is not permission to sit on one's hands. Here, Cadet consented to arbitration and then failed to do its part to bring its own claims and Archer's counterclaim to resolution, despite a court order compelling arbitration and despite Cadet's implicit representations to the Court when seeking more time to complete the arbitration. It has taken almost no steps to prosecute its claims. Dismissal with prejudice is appropriate.

It is **ORDERED** that the defendants' motion to dismiss with prejudice, Doc. 47, is **GRANTED**. Upon Archer's dismissal of its counterclaim, *see* Doc. 15, judgment will be entered.

This the 27th day of April, 2022.

_____
UNITED STATES DISTRICT JUDGE

11